314-0401 People of the State of Illinois and Me by Gary Gnedevich v. Antonio Bailey, Appellant by Nicole Burns Ms. Burns, you may proceed Good afternoon, your honors. May it please the court. My name is Nicole Burns from the Office of the State Appellate Defender. Representing the appellant in this matter, Mr. Antonio Bailey. In his post-conviction petition, Bailey made a substantial showing that his trial counsel was ineffective for eliciting statements from DeMarshall Johnson that Bailey had previously been convicted of this murder and then by failing to object to those statements. Appellate counsel was also ineffective for failing to raise this issue on appeal. By way of background, Johnson was a state's witness who claimed that Bailey had confessed to him and that he had supplied Bailey with the murder weapon in this case. At trial, Johnson admitted that he was testifying as part of a plea deal in his federal case and that he hoped to reduce his sentence by his testimony. Johnson had not come forward with this information until four years after the murder in 2007. This was a murder that was committed in 2002. On direct examination, Johnson stated that he had not told the police immediately about the alleged confession because it would not benefit him and because they had already been told by other people. So he didn't have to worry about it. Now defense counsel decided on cross-examination to ask several times why he had not come forward sooner. And this was not reasonable trial strategy. The information that would have benefited his client, Mr. Bailey, was already before the court. Johnson had not come forward immediately and Johnson was receiving a benefit from his testimony. By asking Johnson again why he didn't come forward earlier, defense counsel only provided Johnson with additional opportunities to give self-serving reasons why he didn't come forward earlier. And not only were these reasons self-serving, they ended up being extremely prejudicial to Mr. Bailey. One of the questions that was asked, the first question that elicited one of these statements was, five years, you're not going to say anything to anybody about the fact that someone came up to you and admitted they killed someone, which elicited, why would I? He was already locked up for it. And counsel would have been aware of the timing here because he knew that Bailey had been convicted of this murder once before and that this court had overturned that conviction. He knew that there was a mistrial in between and so when he was asking about those five years, it was not unreasonable to assume that Johnson also knew about that conviction. Although he didn't know whether Johnson knew or not because he hadn't spoken to Johnson before this cross-examination and that's brought out in the trial transcript. Furthermore, after getting that prejudicial statement, he did not object. He did not say, we need to strike this prejudicial statement. He did not say, we need the trial court to further advise Mr. Johnson not to bring up this previous conviction. And he did not move away from the topic. Instead, he doubled down and asked the question, not once more, but three more times. So three more times, a similar statement was elicited. And the next statement that was elicited in response to the question, because it couldn't help you write, was he was already in the penitentiary for being found guilty on the case. So if the jury was confused by the slightly ambiguous term locked up, they were no longer confused once they heard that he'd been found guilty. And that meant that another fact finder, another jury, or the bench, the jury didn't know, had already found him guilty beyond a reasonable doubt. This is some of the most prejudicial testimony that can come in front of a jury. The Supreme Court has said that when a jury hears about another jury's verdict, it can diminish their sense of responsibility. The First District has said this is potentially more damaging than hearing about other prior crimes. So this is some of the most prejudicial testimony that can come in front. Didn't the defense counsel, the judge, ask them, well, what are you going to do about these statements? And you say, hey, we've talked about this, and I told them the only thing we can do with this is for this trial, and he didn't want to do that. The defendant didn't want to seek a mistrial. Yes, the trial court brought up the possibility of a mistrial. Defense counsel didn't bring it up. He says, I've discussed this with my client, Your Honor, the possibility of requesting a mistrial, and he does not want me to make that motion. We have no idea what counsel said to defendant, whether or not he advised him to take the mistrial or not to take the mistrial. I would suggest that this is so prejudicial that to respond to a trial court, maybe you should have made the mistrial motion on its own, even over a defendant's objection. And we can't waive an ineffective assistance of counsel argument. This isn't specifically just against the mistrial that we're talking about now. We're talking about defense counsel eliciting those statements and then failing to cut them off at the pass. So this wasn't a one-time thing. This wasn't one statement. This was four times that he brought forward these statements. And so, yes, yes, as counsel said, the horse was out of the barn, but counsel opened the gate. And that's what we're talking about now, is his counsel acting ineffectively and eliciting and failing to object to those statements. And that's not the sort of thing that can be waived, because he did not knowingly and voluntarily waive his right to effective assistance of counsel. No one asked him about whether or not he wanted to waive his knowingly effective assistance of counsel. And also here, when he failed to ask for a mistrial, no one said to Mr. Bailey, you are forever waiving any issue regarding any of this testimony regarding Johnson. And that's the sort of admonishment that was raised in one of the cases that the state cited, which is Velez. There was an admonishment there that if you don't go forward with this mistrial, you're waiving this forever. That's not what happened here. What happened here is that trial counsel opened the door, let in horribly prejudicial statements, and then continued to go back to them again and again. Enough so that the court itself stated to counsel, these are repetitive questions. And then the court was forced to bring up Sue Esponte, do you want a mistrial here? So that sort of should have flagged for the appellate counsel the ineffectiveness argument here. And it should have been raised by appellate counsel because it was clearly meritorious. It was flagged by the trial court, and it affected the fundamental fairness of this trial. This was an extremely close case. This is not a case of overwhelming guilt. The only evidence against Mr. Bailey are three statements by three convicted felons who were negotiating with the prosecution at the time they made the statements against Mr. Bailey. And two of those statements were recanted at trial. Mr. Martez Harris actually wrote an affidavit saying he was lying at the time he made his statement. Bowie said that he was lying on the stand about his prior statement. And then the only other evidence is this Marshall Johnson testimony, which is rebutted again by two witnesses. So this is not an overwhelming case. There was severe prejudice here. And if there are no further questions about this argument, I'd like to just briefly move to the second issue. It's a fairly straightforward issue here. The petition made an ineffective assistance of trial counsel argument based on trial counsel's failure to object to the late introduction of a special interrogatory. Post-conviction counsel did not amend the petition to preserve this claim by making an ineffective assistance of appellate counsel claim. Post-conviction counsel clearly thought this issue was meritorious. He argued it. However, he did not do what was procedurally necessary to shape it into proper legal form. Two minutes, please. This rebutted the presumption of compliance with 651C. This is a clear 651 violation. And we would request a remand for new second-stage proceedings with new post-conviction counsel with regards to that issue, if there are no further questions. Thank you. Thank you. Mr. Konenovic. May it please the Court, counsel. In this case, the trial counsel tried to take and do is trial counsel tried to take and establish that the Marshall Johnson, if you will, kind of came up with this story. And what he tried to take and do is he tried to establish that he had this information in 2002 that he basically knew on the date of 10-8-02, basically the date that Bradley was shot. In 2002, he knew that the defendant had shot and killed Bradley. Yet it wasn't until five years later that he decides to come forth to say anything. Now, in that five-year period, what counsel was trying to establish was a lot was happening here to Mr. Johnson. He had some run-ins with the law. He basically had a parole hold on him. He basically had misdemeanor charge brought against him. But yet, all of this time, all of this time, he never said anything. And while, in fact, while at a time when the defendant wasn't even in custody, because the defendant obviously, according to Mr. Johnson, had said something to him. He said it to him. He wasn't in jail. He was out in public. He was still out and about. Johnson still didn't come forth to say anything. But it wasn't until Johnson, all of a sudden, because of federal authorities, was facing a life sentence that all of a sudden he decides to come forward at a time when the defendant is still in custody. So I think the point that counsel was trying to make was to the jury, was Mr. Johnson basically is using this as basically self-serving. It's basically he's just coming forth with this story in an effort to impeach him in his statement by trying to show that basically it wasn't. He had this information he had all this time to take in and use it, but decided not to use it until basically he was really up against the wall, supposedly. Now, attacking the credibility of the statement, whether or not it should be believed or not. After that cross-examination, trial judge basically broached the subject. Trial judge basically said, hey, this kind of question went on. What do you have to say about that? And defense counsel said, quote, this was found at 1389 and 90 of the record. Judge, my only feeling on that, certainly when these statements were made, they weren't in response to my direct questions. I never asked him anything regarding Mr. Bailey's, any prior hearings in this matter. I don't believe I even touched on that, nor did I ever attempt to elicit anything regarding him being found guilty or for the fact that there was a hung jury previously in this case. They were all spontaneous remarks by the witness, I believe, to prejudice the jury and further his cause in federal court. So basically what defense counsel is saying is I didn't elicit anything. And if you look at the questions and if you look at the answers, Johnson wasn't responding to the questions. The questions were pretty much yes or no. He was explaining himself. And that clearly comes out in the record. So then the trial judge says, well, what is it that you want to do about this at this time? To which defense counsel replied, and again I quote from 1390 of the record, I've discussed with my client, Your Honor, the possibility of requesting a mistrial, and he does not want me to make that motion. I don't believe that there's anything that can be done. I think if anything is said to the jury at this time about it or later on, it's only going to draw their attention to it further. Hopefully it was glossed over. So I mean the horse is out of the barn at this time. Based on what has happened here is the people's position that, number one, the specific issue concerning the questioning has been substantively waived, not forfeited, but waived, specifically waived by petitioner. This is not a question, as counsel has put it, that petitioner was not asked whether he was waiving his right to the effective assistance of counsel. That's not the point. The issue is, was counsel ineffective or was ineffective assistance of counsel for having done what he did? Underlying that is, what did he do? That's what the court's looking at in order to decide whether or not counsel was or was not ineffective. In looking at what was done and what happened here, basically defendant had the opportunity to request the mistrial and chose not to. Having forgone that, defendant has substantively waived any particular error with respect to the questions and answers that were done here in an effort to impeach Johnson. I don't think counsel, defense counsel or trial counsel, elicited anything. He didn't specifically ask, as he said. His objective and his questions were clearly directed at why Johnson had withheld this information. Secondly, I think if you look at his answer with respect to the substantive waiver, he talks about the fact of what? The horse is out of the barn. I don't think anything can be done. If anything were done, it's just going to draw the jury's attention to it even more and probably create more prejudice on what's already done. And I think if you look at what counsel did, if you look at the flow, because there were times when he said, well, he got Johnson basically to admit that he hadn't said anything. And he got the time frames down. It's just that whenever Johnson was pinned against the wall as to withholding it in an effort to basically, this is my get out of jail card and monopoly, that's when Johnson every time would offer an explanation. He's already in jail. He's already in jail. Well, he was already in jail when he went to the feds, but he still decided to squawk. Why? That's the point that counsel was trying to get across. In this scenario and in what was happening and the fact that the witness was evasive in explaining, counsel could very well have made a tactical decision not to take an objection, not to take and say, Your Honor, I want to advise the witness to answer my question. What he's doing is he's drawing the jury's attention that something's happening here that defense counsel doesn't like. Why doesn't defense counsel like it? Is it because it's prejudiced in the jury or is it because of the fact that he doesn't like the answer and he's not getting the answer that he wants and basically the defendant's got something to hide. So what it gets down to is I can't take and judge what defense counsel did. I wasn't there. I didn't see what happened. I don't know the tenor of everything, but based upon what was said and what the trial judge did in this particular case, this issue has either been self-examined or it was a trial tactic, a trial strategy, which courts have found that counsel can make the tactical decision not to object to objectionable material. Just because it's objectionable and you have the opportunity and the ability to do so does not automatically mean that you must do it. And as a result of that, we think that the dismissal of this issue is proper. And what we have here also in this petition is the fact that besides what the state has argued, we've had two other counsel in this case who have not argued this issue. Appellate counsel on direct appeal, Verland Mines from the State Appellate Defender's Office, didn't argue it. Post-conviction counsel didn't argue this. He stood in a brief. Post-conviction counsel didn't argue it. And to me, that indicates that it was their professional opinions themselves that this issue was either self-examined or it was a trial tactic and was something that could not be raised in terms of establishing ineffective assistance of trial counsel. With respect to the second issue, which I find it's an interesting take. It's an interesting take because petitioners are arguing that post-conviction counsel did not provide a reasonable level of assistance because post-conviction counsel didn't amend the petition to make an allegation about the ineffective assistance of appellate counsel for not raising the ineffective assistance of trial counsel for not objecting to the special interrogatory. Now, I find it interesting because in a direct appeal in this case, appellate counsel raised the issue. What happened was, in the prior two cases, based on appellate court decisions that dealt with the 730 ILCS 5-5-81 A1D III, the add-on, state didn't ask for it. State didn't say anything. At this third trial, based on SHARP, that overruled appellate court precedent, that it found the add-ons to be unconstitutional in various situations, then in Hochschild, that basically held that application of this would be proper. Application of the 25-to-life add-on in this case, because the defendant used the gun to kill somebody, that that provision was applicable. So, based on the current Illinois law at that time, this court determined that on SHARP and Hochschild, this provision, 5-5-81 A1D III, applied to the defendant's case. As a result, the 25-year add-on sentence was proper. Okay? What the defendant is now arguing is, the defendant is now arguing, even though this court found that that provision was applicable, it was ineffective assistance of trial counsel not to have objected to the special interrogatory. Which is interesting, because in order for this provision to apply under 725 ILCS, 5-111-3-c-5, if you're seeking, the state is going to seek the sentence that's enhanced, above and beyond, that relies upon a factor that is not, other than what the factoring of the offense, that factor has to be pleaded or notice has to be given. And in addition to that, the jury, the fact finder, has to make that fact finding in order for the additional sentence to be added on. Apprendi versus New Jersey. So, in this case, the defendant is saying it was ineffective assistance for counsel to object to the beginning of the special interrogatory that was constitutionally and statutorily required to be given, in order for the 25-year add-on to be constitutionally and statutorily correctly applied. Since the statute was correctly applied, obviously counsel had no objection to the special interrogatory, because the special interrogatory had to be given. And I think it's around R-1527 of the record, the trial judge made the determination, basically, I determined that this provision was applicable, and the special interrogatory was properly given. So basically what it gets down to is, you can't basically claim that appellate counsel was ineffectively providing ineffective assistance, for not raising trial counsel's failure to object, because the failure to object is basically a non-issue. Because the special interrogatory had to be given. So you can't claim that post-conviction counsel was ineffective, for not amending it to allege the ineffective assistance of appellate counsel. Plus, as a general proposition, the allegation that appellate counsel is ineffective is done to avoid procedural forfeiture. I don't really know what's being procedurally forfeited here, or what was, that this allegation would be proper. If you take a look at the Turner case, 1999, Illinois Supreme Court, Justice Heichel's decision, basically, in that case, the trial judge held, I'm dismissing the petition because everything's forfeited. Because it wasn't raised on direct appeal. Well, in this case, this issue wasn't decided because of a forfeiture. The issue was dismissed here because the fact that the giving of the, the failure to object was a non-issue. It wasn't an effective assistance. And so, and also, the argument that is made here, that you can't, you can't find harmless error based on a Rule 651C violation. The problem is, in order for their, in order for that conclusion to be reached, it has to be a violation. And there's only two ways that there can be a violation of 651C, by post-conviction counsel. Failure to consult, failure to read the record, or the failure to amend if required to amend. Because the Supreme Court has said in all of its cases, there is no obligatory duty on counsel that they have to amend in order to provide effective assistance of post-conviction counsel. And in this case, because there really is no issue concerning the special and obligatory, appellate counsel's failure to take and raise that issue doesn't salvage the defendant's argument at all. In fact, there is no argument with respect to this issue. Thank you. So based on that, Your Honors, the people would respectfully request that this Court affirm the dismissal of the petition. If there are any other questions, I'll be more than happy to respond. Thank you. Thank you. Just to address a couple of the issues that were made by counsel. His argument regarding the first issue was what counsel was trying to do. And counsel was trying to establish that Johnson should have come forward with this earlier. And as I said in opening argument, the info that benefited Bailey had already come forward. He did wait to come forward with this information, and it was going to benefit him. And he waited those five years, and we were aware of the timing of what happened with Bailey during those five years, which is he had been convicted of some things. The proper time to make an argument that Johnson should have come forward earlier and what was he doing during all of this time would have been closing argument. Not in front of the jury, exploring a witness that he had never heard from before. He had no idea what he was going to say, particularly when he knew that his client had already been convicted. And certainly he should have cut it off and objected after he got the first prejudicial statement or the second prejudicial statement, let alone the third and the fourth, and he only cut it off once the court told him to. So this was actually the ineffective assistance that we're responding to. The state has now completely changed its position from trial. It's now saying, well, these were spontaneous statements. These statements came out of nowhere. That's not what they said at trial. At trial, the state said, these were not spontaneous statements. He asked ten times, why, why, why, why didn't you come forward earlier? And he gave the same answer. So the state has now flipped its position, but back then, they read the record as we read the record now, which was trial counsel continued to ask why he didn't come forward, and trial counsel continued to get the same prejudicial answer. And if it was his strategy not to call attention to it, then he utterly failed in that strategy by continuing to ask the same question that was getting that prejudicial answer. Utterly failed in that strategy. It was not a reasonable strategy. The risk with the trial strategy is sometimes it fails. I mean, it's not a reasonable strategy if I'm not going to call attention to this, but I'm going to ask you the same question that already gave that answer, and I'm not going to object to that answer either, and I'm not going to have counsel, I'm not going to have the court advise you that you can't give that answer. I mean, to do the same thing again and again and again and expect different results is insanity. So that's certainly not a reasonable trial strategy. Furthermore, we're at the second stage. So if we're looking at the waiver question, and we're looking at what did counsel say regarding mistrial, we don't know whether he advised Mr. Bailey to go forward with a mistrial or whether he didn't. That's not on the record. And at this point, we're at second stage. This is liberally construed. We could get to third stage, and counsel could say, yeah, I did, I advised him to take the mistrial, and he decided to take his chances. And then maybe at third stage, this issue dies. But that's not where we're at right now. We're at a stage where the record is liberally construed in favor of the petitioner. And furthermore, waiver issues are liberally construed in favor of the defendant. And just on the second issue, we don't need to get to the merits of this argument, because we know, and the state has conceded, that counsel failed to make the necessary amendment to put this in legal form, which is by alleging the ineffective assistance of appellate counsel. But this is a different argument than was made on appeal, on direct appeal. This is a different argument, because, and I can't get into the merits, because it wasn't preserved for me to get into the merits, because there was no ineffective assistance of appellate counsel on direct appeal claim. But there are possible compulsory jointer questions here. There are possible double jeopardy questions here. So this is a question of whether the state decided two times to proceed all the way to jury deliberations and not to ever give the jury the instruction for this add-on. Never did. Not once. There was no, far after Sharpe was decided, was that second case. Just in case you guys are wondering about the timing here. Sharpe was decided, and they went forward with that second case. And they even brought up the idea of asking for this interrogatory, and they didn't go forward with it. So they decided not to do it until this trial. There was no notice. There was no objection made to it. And it's clear that counsel was caught completely unaware when he gets to sentencing, and they actually asked for the add-on. So this additional fact was a fact that they forfeited on two first trials. And maybe there's a good argument to be made about it. Maybe there's a good argument to be made about it at post-conviction. Maybe there would be a good argument to be made about it if they lose another post-conviction, and I get it on appeal. But right now, it's not in proper legal form. So I couldn't make that argument. And so that's the problem here. 651C was violated because it wasn't put into proper form. And for all these reasons, we ask that you remand for a second stage, unless you guys have other questions. With new post-conviction counsel, we're on the first issue, third stage. Thank you very much. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued to you as soon as possible. And right now, let's take a brief recess for panel discussion. Will you rise for a standing recess? Thank you.